# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 07-1777 JB

JULIO CESAR FARIAS-GUIJARRO,

      Defendant.

## <u>AMENDED MEMORANDUM OPINION AND ORDER</u>[1]

**THIS MATTER** comes before the Court on the Sentencing Memorandum on Behalf of Defendant Julio Cesar Farias-Guijarro, filed November 30, 2007 (Doc. 23).  The Court held a sentencing hearing on January 24, 2007.  The primary issues are: (i) whether the United States has to prove Farias-Guijarro's prior conviction by clear and convincing evidence; (ii) whether the Court should overrule Farias-Guijarro's objection to the factual recitation in paragraph 21 of the Presentence Investigation Report ("PSR"); (iii) whether Farias-Guijarro's prior conviction for Injury to Child, Elderly Individual or Disabled Individual With Intent to Cause Bodily Injury is a crime of violence under U.S.S.G. § 2L1.2; and (iv) whether Farias-Guijarro's case counsels for a variance. Because the Court believes that the United States must prove Farias-Guijarro's prior conviction by a preponderance of the evidence, because the Court believes that it can properly consider paragraph 21 of the PSR in its <u>Booker</u> analysis, and because Farias-Guijarro's prior conviction is a crime of violence under U.S.S.G. § 2L1.2, the Court will overrule Farias-Guijarro's objections.  The Court

---

[1]The Court issues this Amended Memorandum Opinion and Order solely to cure formatting irregularities that appeared in the original Memorandum Opinion and Order.  This Amendment does not make any substantive changes.

will also deny Farias-Guijarro's request for a variance and sentence him to 41 months imprisonment.

**FACTUAL BACKGROUND**

The 2006 Texas charge against Farias-Guijarro was based on an incident in which, according to the police reports, Farias-Guijarro beat and raped a seventy-one year-old woman who was a friend of his mother.  See PSR ¶ 21, at 6-7, disclosed on October 11, 2007.  The United States Probation Office ("USPO") obtained the details of the offense that are set forth in the PSR from the El Paso, Texas Police Department Offense Report.  See id. at 6.

A grand jury in Texas originally charged Farias-Guijarro with "Aggravated Robbery."  PSR, Addendum at 3, disclosed December 17, 2007 ("Addendum"), State v. Julio Farias, Cause No. 20060D04327-346, Indictment, 346th District Court of El Paso County, Texas ("Indictment").  The Indictment detailed that Farias-Guijarro, in the course of committing theft, "intentionally, knowingly, and recklessly cause[d] bodily injury to the [victim] a person sixty-five (65) years of age or older by striking [the victim] about the head with [his] hand."  Indictment (emphasis added).

It appears that, although "Julio Farias" was originally charged with the offense of "Aggravated Robbery," the crime to which he pled guilty was the "lesser included offense" of "Injury to a Child, Elderly Individual, or Disabled Individual," as defined by Texas Penal Code § 22.04.  PSR, Addendum at 4, State v. Julio Farias, Cause No. 20060DO4327, Judgment on Plea of Guilty Before the Court Waiver of Jury Trial, District Court of El Paso County, Texas (entered into October 27, 2006)("Plea").  Farias-Guijarro's Plea indicates that, on October 12, 2006, Farias-Guijarro was convicted of "Injury to a Child, Elderly Individual, or a Disabled Individual" with Intent to Cause Bodily Injury, a 3rd Degree Felony.  Plea.  The plea agreement that Farias-Guijarro executed with the State of Texas contains a section entitled "Judicial Confession," which states:

I, the undersigned defendant in this case, do now hereby, in open Court, admit all of

the allegations in the indictment or information now pending in this cause including any [and] all paragraphs alleged for the purpose of enhancing punishment, and confess that I committed the offense as charged in the indictment or information, as well as all lesser included offenses arising out of the same criminal episode and admit the truth of any and all paragraphs alleged for purposes of enhancing punishment.

Addendum at 10,  Court's Notice to Defendant of Rights, Written Admonishments, Waiver of Rights, Judicial Confession, and Plea Agreement ("Plea Agreement").  The signature block directly below this admission bears the signature of "Julio Farias."  Id.  The Plea Agreement form used by the State of Texas contains the statement "You are pleading guilty to the offense of" and is followed by a blank line on which is hand-written "Injury to An Elderly Person." Plea Agreement at 2.  The Plea Agreement does not specifically mention the originally charged "Aggravated Robbery." Id. The language in the Judicial Confession section of the Plea Agreement, however, contains an admission to the offense "charged in the indictment or information, as well as all lesser included offenses arising out of the same criminal episode and admit the truth of any and all paragraphs alleged for purposes of enhancing punishment."   Plea Agreement at 5.

The PSR indicates that, on October 12, 2006, Farias-Guijarro pled guilty to a lesser charge of Injury to Child, Elderly Individual or Disabled Individual and was sentenced by the district court in El Paso, Texas.  See PSR ¶ 21 at 6.  While Farias-Guijarro was convicted of violating Texas Penal Code § 22.04, he admitted to the factual basis contained in the Indictment, including the allegation that he struck the victim about the head.  See Plea Agreement at 5; Indictment at 1.  He was sentenced to ten-years probation, a fine of $1,500.00, $223.00 in court costs, and 500 hours of community service.  See PSR ¶ 21, at 6.

As part of the Texas plea papers, the USPO included a document with the heading of "Court's Findings, Approval, and Order."  Addendum, at 14, Court's Findings, Approval and Order

("Court's Findings").  The state-court documents state, in the fourth paragraph, that Farias-Guijarro

"has admitted all of the allegations charged in the indictment or information on file in this cause and

has, in open court, confessed his or her guilt to the offense charged."  Court's Findings at 1.

Subsequently, on or about November 2, 2006, Farias-Guijarro was deported to the Republic of

Mexico.  See PSR ¶ 21, at 6.

## PROCEDURAL BACKGROUND

On August 24, 2007, Farias-Guijarro pled guilty, with a plea agreement, to a one-count

information charging a violation of 8 U.S.C. § 1326(a) and (b), that being re-entry of a removed

alien. See Plea Agreement at 2, filed August 24, 2007 (Doc. 13).  After he pled guilty, the USPO

prepared the PSR.  See PSR, disclosed October 11, 2007.  Farias-Guijarro's base offense level is 8.

See PSR ¶ 12, at 5.  He received a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A) and

a 3-level adjustment for acceptance of responsibility.   See PSR ¶¶ 13, 18 at 5.   Thus, Farias-

Guijarro's total offense level is 21 and his criminal history score is II, making his Guideline

imprisonment range 41 to 51 months.  See PSR ¶¶ 19, 40 at 5, 10.  Paragraph 21 of the PSR states:

> The defendant was represented by counsel.  Court records revealed the defendant
> was originally charged with Aggravated Robbery (1st Degree Felony), but on
> October 12, 2006, the defendant pled guilty to a lesser charge.  According to the El
> Paso, Texas Police Department offense report, the victim, age 71, reported she
> resides with her friend Socorro Montes and her friend's son (the defendant).  The
> defendant was having a party and the victim went to bed as she was tired.  The
> victim advised she [was] woke[n] up by two individuals (including the defendant)
> punching her on the face and chest area for no apparent reason.  The officer observed
> the victim had bruises on her face and arms.  She stated the two individuals asked her
> for money and asked her where she hid the money.  When the victim told them she
> did not have any money, the two individuals continued punching her and one of the
> individuals put a knee into her stomach area.  The victim stated she does not
> remember how she got away from the attackers, but she left the residence and hid by
> some stairs in an area nearby.  The victim stated she waited for her friend to get
> home from work to return to her residence.
>
> On November 07, 2006, the victim was re-interviewed by an officer.  The victim

stated on August 12, 2006, Socorro Montes left to Juarez and left the victim with a money box containing rent money along with money for any other bills (amount unspecified).  The defendant did not know where the money box was nor would Montes let the defendant get money from it.  On August 16, 2006, the defendant told the victim he and his friend would be drinking beer and that she should go to sleep in the back bedroom.  The victim stated she went to the back bedroom and attempted to [fall] asleep when she felt someone touching her leg.  She turned to see it was the defendant and he was naked.  The victim told the defendant to think about his children and his wife and he would end up losing them.  The defendant said he did not care about anything since his brother was killed.  The defendant advised he was going to kill the victim and cut her up into little pieces and dump her.  The defendant stated he had done this to his mother, but he did not kill her.  The victim begged him not to hurt her.

The defendant sat on top of the victim and she screamed for help.  The defendant punched her several times in the face and cho[k]ed her.  The defendant threatened to kill her if she told anyone about what happened.  The defendant told the victim to take off her clothes.  The victim refused to take off her clothes so he punched her and she fell back onto the bed.  The victim took of[f] her clothes.  The defendant had sexual intercourse with the victim.  After he ejaculated, the defendant inserted his finger inside of her vagina and then inserted his tongue into her vagina.  The defendant did this for a long time and then laid on the bed next to her.  The victim got dressed and told him she was going to use the restroom.  The defendant told her if she left the residence he would find her and kill her.  The victim left the residence and hid by the back apartment stairwell.  The victim stated she waited until the defendant and his friend were picked up for work then she went back inside of the residence.  The victim reported when she was initially interviewed she was afraid to say she was sexually assaulted by the defendant because she was afraid and embarrassed.  The victim advised she found out the defendant was out of jail and she was afraid he would do this to someone else as he said he has done this many times before.  The victim stated she is worried the defendant is going to kill her.

The El Paso, Texas Probation Office was contacted and notified of the instant offense; however, a response has not yet been received.  Therefore, at this time it is unknown what actions, if any, will be taken as to the probation violation proceedings.

PSR ¶ 21 at 6-7.  Farias-Guijarro's counsel filed a sentencing memorandum on November 30, 2007.

See Sentencing Memorandum on Behalf of Defendant Julio Cesar Farias-Guijarro, filed November 30, 2007 (Doc. 23)("Sentencing Memorandum").  In his Sentencing Memorandum, Farias-Guijarro argues that his criminal conviction in Texas for "Injury to a Child, Elderly Individual, or Disabled

Individual" is not a "crime of violence" as defined by U.S.S.G. § 2L1.2. Sentencing Memorandum at 1. Farias-Guijarro also argues that the United States must establish the fact of a prior conviction by clear-and-convincing evidence, and specifically objects to the inclusion of the factual recitation in paragraph 21 of the PSR. See Sentencing Memorandum at 2, 8. Farias-Guijarro's Sentencing Memorandum also sets forth factors that he contends the Court should consider in determining what sentence, and what length of sentence, is sufficient but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). See Sentencing Memorandum at 8-12. Specifically, Farias-Guijarro requests a variance and submits that a departure and/or variance, which ultimately results in a sentence of 8 to 14 months, is appropriate. See Sentencing Memorandum at 8-12. Farias-Guijarro states that his total offense level should be 10 rather than 21. See id. at 8.

On December 6, 2007, the United States responded to Farias-Guijarro's Sentencing Memorandum. See United States' Response to Defendant's Sentencing Memorandum Filed November 30, 2007 (Doc. 23), filed December 6, 2007 (Doc. 24)("United States' Response"). The United States argued that, based on Farias-Guijarro's admissions in the plea agreement and charging document, the Court should conclude that he has committed a crime of violence by using force against the victim and thus should receive the 16-level enhancement. See United States' Response at 5. The United States also argued that a variance based on the factors in 18 U.S.C. § 3553(a) is not warranted. See United States' Response at 6.

Farias-Guijarro's counsel filed a reply to the United States' Response on December 14, 2007. See Defendant's Reply to "United States' Response to Defendant's Sentencing Memorandum filed November 30, 2007 (Doc. 23)," filed December 14, 2007 (Doc. 27)("Defendant's Reply"). In his reply, Farias-Guijarro's counsel argued that the underlying police reports or pre-sentence reports are not appropriately considered by the Court in its assessment whether Farias-Guijarro's prior

conviction is a crime of violence.  See Defendant's Reply at 1.  Farias-Guijarro also reiterated his objection to the inclusion of the factual recitation in paragraph 21 of the PSR which was taken from a prior PSR from the State of Texas.  See id.  Farias-Guijarro argued that he pled guilty to the lesser charge of injury to an elderly person and not the original charge of aggravated robbery.  See id. at 2. Farias-Guijarro stated that "[i]t stretches the imagination that the Defendant, by pleading guilty to a lesser included offense, somehow admitted conduct that supported a higher charge that was ultimately dismissed."  Id. at 2.

On December 17, 2007, the USPO disclosed an Addendum to the PSR that included its response to Farias-Guijarro's objections and attached to it a copy of the state indictment, the state plea, the state plea agreement, and the state court's findings, approval and order.  See Addendum. In the Addendum, the USPO stated that it had properly assessed the 16-level enhancement, because the charging document stated that Farias-Guijarro "intentionally, knowingly and recklessly cause[d] bodily injury to a person 65 years of age or older by striking the victim about the head with [his] hand."  Addendum at 1-2.  The USPO also noted that Farias-Guijarro admitted to the factual basis contained in the Indictment, including the allegation that he struck the victim about the head.  See id.  In response to Farias-Guijarro's objection to the inclusion of paragraph 21, the USPO stated that the information in paragraph 21 was obtained from the El Paso, Texas Police Department Offense Report and was not used to determine if Farias-Guijarro's prior conviction was a crime of violence. See Addendum at 2.  Farias-Guijarro's denial of the underlying facts in paragraph 21 was added to the PSR by way of the USPO's Addendum.  See id.

## LAW REGARDING GUIDELINE SENTENCES

While a Guideline sentence is advisory, the sentencing court must still correctly calculate the Guideline sentence before considering whether to vary from that sentence.  In this case, the

parties do not dispute that the Court may apply the modified categorical approach to determine whether Farias-Guijarro's prior conviction for Injury to a Child, Elderly Individual or Disabled Individual is a crime of violence under the Guidelines.  See United States' Response at 3-4; Sentencing Memorandum at 7.  The primary issue is whether, under the modified categorical approach, the appropriate sentencing documents show that Farias-Guijarro committed a crime of violence warranting a 16-level enhancement.

      **1.**      **Law Regarding Interpretation of Guideline Language.**

Generally speaking, the Sentencing Guidelines are interpreted according to accepted rules of statutory construction. See United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir. 2003). In interpreting a Guideline, the language in the Guideline itself, as well as the interpretative and explanatory commentary to the Guideline provided by the Sentencing Commission, should be looked at and reviewed.  "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Torres-Ruiz, 387 F.3d 1179, 1181 (10th Cir. 2004)(internal citations and quotations omitted).

      **2.**      **Law Regarding Sentencing for Re-Entry Crimes.**

Section 2L1.2(a) of the United States Sentencing Guidelines provides for a base-offense level of 8 for re-entry after deportation.  See U.S.S.G. § 2L1.2(a).  U.S.S.G. § 2L1.2(b)(1)(A)(ii) requires a 16-level enhancement "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The application notes to U.S.S.G. § 2L1.2 define a "crime of violence."

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or

<u>any offense under federal, state, or local law that has as an element the use,
attempted use, or threatened use of physical force against the person of another</u>.

U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(emphasis added).

> **3.      Law Regarding Standard of Proof for Prior Convictions.**

The United States Court of Appeals for the Tenth Circuit requires that the United States must establish the fact of a prior conviction only by a preponderance of the evidence.  See <u>United States v. Cooper</u>, 375 F.3d 1041, 1052 (10th Cir. 2004)(stating, "[w]henever a prior conviction is relevant to sentencing, the government must establish the fact of that conviction by a preponderance of the evidence." (citing  <u>United States v. Simpson</u>, 94 F.3d 1373, 1381 (10th Cir.1996))). Cf. <u>United States v. Easterling</u>,  137 Fed.Appx. 143, 147 (10th Cir. 2005)(holding that determination of "whether a prior felony constitutes a serious drug offense under the [Armed Career Criminal Act] is a question of law not fact, and thus there is no requirement that the existence of such prior convictions be charged in the indictment or proven to a jury under a beyond a reasonable doubt standard.").  The United States Court of Appeals for the Ninth Circuit, however, follows a different approach.  See <u>United States v. Snellenberger</u>, 493 F.3d 1015, 1020 (9th Cir. 2007)(noting the "government's evidentiary burden of clearly and unequivocally establishing the facts underlying a prior conviction so as to justify the enhancement of a criminal sentence").  The Ninth Circuit has stated that "[d]ue process is generally satisfied by using a preponderance of the evidence standard to prove sentencing factors that are set forth in the [Guidelines] . . . . However, when a sentencing factor has an extremely disproportionate effect on the sentence, the government must prove the sentencing enhancement by clear and convincing evidence." <u>United States v. Bonilla-Montenegro</u>, 331 F.3d 1047, 1049-50 (9th Cir. 2003)(citations omitted).

In a sentencing proceeding, the United States need only prove the existence of a fact relevant

to sentencing by a preponderance of the evidence, rather than beyond a reasonable doubt. The recent upheaval in federal sentencing jurisprudence has not affected the applicable standard for sentencing proceedings in the Tenth Circuit.  The practice is, in essence, an artifact of the lower burden of proof that has always been applicable to sentencing proceedings.

a.      **Supreme Court Relevant Conduct Jurisprudence.**

In <u>Witte v. United States</u>, 515 U.S. 389 (1995), the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. The defendant in <u>Witte v. United States</u> had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and a 1991 attempt to import marijuana.  <u>See id.</u> at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics.  <u>See id.</u> At sentencing, the district court concluded that, because the 1990 attempt was part of the same continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3 and therefore calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. <u>See</u>  <u>Witte v. United States</u>, 515 U.S. at 394.

In September 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities.  <u>See id.</u>  The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses because the district court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  <u>See id.</u> at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the Double Jeopardy Clause's prohibition against multiple punishments. <u>See id.</u> The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the

-10-

punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Wittie, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other Circuit Courts of Appeals, including the Tenth Circuit, that had previously considered this question. See id. at 255 & n. 19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the circuits and affirmed the Fifth Circuit. See Witte v. United States, 515 U.S. at 395. In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." Id. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." Id. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." Witte v. United States, 515 U.S. at 403.

In United States v. Watts, 519 U.S. 148 (1997), the Supreme Court, in a per curiam opinion, relied upon the holding of Witte v. United States and upheld a sentencing judge's use of conduct for which the defendant had been acquitted against a double-jeopardy challenge. In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every Circuit Court of Appeals -- other than the Ninth Circuit -- and that each had previously held that a

sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See id. at 149 (citing, among other authorities, United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).

There were two Ninth Circuit cases on appeal in United States v. Watts.  See United States v. Watts, 67 F.3d 790 (9th Cir. 1995); United States v. Putra, 78 F.3d 1386 (9th Cir. 1996).  In United States v. Watts, a jury convicted Vernon Watts of possessing cocaine with intent to distribute, but acquitted him of using a firearm in relation to a drug offense.  See id. at 149-50.  Despite Watts' acquittal on the firearms count, the district court found, by a preponderance of the evidence, that Watts had possessed guns in connection with the drug offense, and, at sentencing, added two offense levels to his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1).  See id. at 150.  The Ninth Circuit vacated the sentence, holding that "a sentencing judge may not, 'under any standard of proof,' rely on facts of which the defendant was acquitted."  Id. (quoting United States v. Watts, 67 F.3d 790, 797 (9th Cir. 1995))(emphasis in original).

The second case on appeal, United States v. Putra, involved a defendant, Cheryl Putra, whom authorities had videotaped selling cocaine to a government informant on two separate occasions. See United States v. Watts, 519 U.S. at 150. The jury convicted Putra of aiding and abetting possession with intent to distribute one ounce of cocaine in association with the first sale, but acquitted her of aiding-and-abetting possession with intent to distribute five ounces of cocaine in association with the second transaction.  At the sentencing hearing, the district court determined that the United States had proved, by a preponderance of the evidence, that Putra had been involved in both sales, explained that the second sale was relevant under U.S.S.G. § 1B1.3, and aggregated the amounts of both sales to calculate Putra's base offense level under the Guidelines. See United States v. Watts, 519 U.S. at 151. "Reasoning that the jury's verdict of acquittal manifested an 'explicit rejection' of

Putra's involvement in the [second] transaction," the Ninth Circuit reversed and vacated the sentence.  Id. (quoting United States v. Putra, 78 F.3d at 1389).

The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See United States v. Watts, 519 U.S. at 151. According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information," and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52. The Supreme Court distinguished the different limitations on the presentation of evidence at trial and at sentencing: "Highly relevant -- if not essential -- to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). The Supreme Court noted that, "under the pre-Guidelines sentencing regime, it was 'well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'" United States v. Watts, 519 U.S. at 152 (quoting United States v. Donelson, 695 F.2d 583, 590 (D.C. Cir. 1982)(Scalia, J.)).

The Supreme Court in United States v. Watts then turned to the Guidelines. The Supreme Court acknowledged that the Guidelines, like 18 U.S.C. § 3661, articulate "in sweeping language the conduct that a sentencing court may consider in determining the applicable guideline range." United States v. Watts, 519 U.S. at 152-53 (citing U.S.S.G. § 1B1.3). The Supreme Court appeared to be persuaded by the Guidelines' conclusion that, at least for offenses involving "a pattern of

-13-

misconduct that cannot readily be broken down into discrete, identifiable units that are meaningful for purposes of sentencing," U.S.S.G. § 1B1.3 cmt. background, "relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses." United States v. Watts, 519 U.S. at 153 (citing U.S.S.G. §1B1.3 cmt., backg'd)(emphasis added in United States v. Watts).  Considering 18 U.S.C. § 3661 and the Guidelines in totality, the Supreme Court stated that, "[i]n short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. at 154.

Relying on its earlier decision in Witte v. United States, the Supreme Court in United States v. Watts went on to explain why its ruling did not violate the Double-Jeopardy Clause.  The Supreme Court in United States v. Watts reaffirmed its holding that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." 519 U.S. at 154 (citing Witte v. United States, 515 U.S. at 395).

The Supreme Court in United States v. Watts criticized the Ninth Circuit for "fail[ing] to appreciate the significance of the different standards of proof that govern at trial and sentencing," and stated that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." 519 U.S. at 155 (quoting United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361 (1984)). The Supreme Court agreed with the dissenting judge in United States v. Putra, the Honorable J. Clifford Wallace, then-Chief United States Circuit Judge, and adopted the proposition that "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." United States v. Watts, 519 U.S. at 155. The Supreme Court in United States v. Watts reasoned that, because "[a]n acquittal is not a finding of

-14-

any fact[,] . . . [w]ithout specific jury findings, no one can logically or realistically draw any factual finding inferences." Id. (quoting United States v. Putra, 78 F.3d at 1394 (Wallace, C.J., dissenting)).

Because the jury's verdict was only dispositive regarding whether there was a reasonable doubt as to the defendant's guilt, the Supreme Court in United States v. Watts concluded that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." 519 U.S. at 156 (quoting Dowling v. United States, 493 U.S. 342, 349 (1990)). The Supreme Court acknowledged, however, "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." United States v. Watts, 519 U.S. at 156. In footnote two, the Supreme Court cited cases from the Supreme Court and from the First, Second, Third, Seventh, Eighth, Ninth, and the District of Columbia Circuits that suggested that clear-and-convincing evidence might be required for judicial findings that result in extraordinary-sentence enhancements. See id. at 156 n.2. The Tenth Circuit, however, has rejected a higher standard and created the split in the circuits. See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1990)("At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit."). In the end, the Supreme Court in United States v. Watts reversed the Ninth Circuit and held that even "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157.

In United States v. Watts, Justices Stevens and Kennedy filed separate dissenting opinions. In his dissent, Justice Stevens conceded that 18 U.S.C. § 3661 supports the per curiam opinion's "narrow holding that sentencing courts may sometimes 'consider conduct of the defendants

underlying other charges of which they had been acquitted,'" but countered that the statute "sheds no light on whether the district judges' application of the Guidelines in the manner presented in these cases was authorized by Congress, or is allowed by the Constitution." 519 U.S. at 161 (Stevens, J., dissenting). Justice Stevens noted that, "[b]y their own terms, the Guidelines incorporate the broadly inclusive language of [U.S.C.] § 3661 only into those portions of the sentencing decision in which the judge retains discretion." Id. at 162 (Stevens, J., dissenting). Justice Stevens concluded that, if the evidence upon which a defendant was acquitted is used to increase the defendant's base offense level, it should be proven beyond a reasonable doubt. Id. at 162 n.2 (Stevens, J. dissenting)("Since Watts' base offense level was increased by this evidence, I believe it should have been proved beyond a reasonable doubt."). Justice Stevens distinguished Watts' and Putra's cases from the Supreme Court's decision in McMillan v. Pennsylvania, 477 U.S. 79 (1986), a case in which the defendant's minimum sentence was enhanced on the basis of a fact proved by preponderance of the evidence. In McMillan v. Pennsylvania, the Supreme Court upheld a Pennsylvania sentencing provision that established a minimum sentence of five years imprisonment if the sentencing judge found by a preponderance of the evidence that a defendant convicted of certain enumerated felonies visibly possessed a firearm during the commission of the offense. See 477 U.S. at 80.

Justice Stevens distinguished McMillan v. Pennsylvania from the facts in United States v. Watts, because, under the sentencing scheme in McMillan v. Pennsylvania, the maximum sentence was unchanged by the judge's finding. See United States v. Watts, 519 U.S. at 166 (Stevens, J., dissenting). Justice Stevens noted that the actual sentence imposed upon the defendant in McMillan v. Pennsylvania "was within the range that would have been available to the judge even if the enhancing factor had not been proved." United States v. Watts, 519 U.S. at 166 (Stevens, J.,

dissenting).  Justice Stevens reasoned that "the holding [in <u>McMillan v. Pennsylvania</u>] should not

be extended to allow a fact proved by only a preponderance to increase the entire range of penalties

within which the sentencing judge may lawfully exercise discretion." <u>United States v. Watts</u>, 519

U.S. at 166 (Stevens, J., dissenting). Justice Stevens concluded his dissent:

> Whether an allegation of criminal conduct is the sole basis for punishment or merely one of several bases for punishment, we should presume that Congress intended the new sentencing Guidelines that it authorized in 1984 to adhere to longstanding procedural requirements enshrined in our constitutional jurisprudence. The notion that a charge that cannot be sustained by proof beyond a reasonable doubt may give rise to the same punishment as if it had been so proved is repugnant to that jurisprudence.

<u>Id.</u> at 169-70.

Justice Kennedy, writing separately in dissent, echoed Justice Stevens' concerns and

criticized the per curiam opinion for failing to address distinctions between uncharged conduct, like

that addressed in <u>Witte v. United States</u>, and conduct related to a charge for which the defendant was

acquitted. <u>See</u> <u>United States v. Watts</u>, 519 U.S. at 170 (Kennedy, J., dissenting). Justice Kennedy

expressed concern that, at a minimum, "increas[ing] a sentence based on conduct underlying a

charge for which the defendant was acquitted does raise concerns about undercutting the verdict of

acquittal." <u>Id.</u>

### b.      Tenth Circuit Relevant Conduct Jurisprudence.

Tenth Circuit caselaw adheres closely to the Supreme Court's results in <u>Witte v. United</u>

<u>States</u> and <u>United States v. Watts</u>.  In <u>United States v. Coleman</u>, 947 F.2d 1424 (1991), the

defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms

possession after he was convicted of conspiracy to possess and possession of a controlled substance

with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to

a drug trafficking crime. <u>See</u> <u>id.</u> at 1428. The Tenth Circuit acknowledged that courts had taken

various positions whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.  See id. at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply two-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy").

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit in United States v. Coleman ruled that the district court did not err in enhancing Coleman's sentence for possession of a firearm. The Tenth Circuit based its conclusion on evidence that: (i) two weapons had been located at the arrest scene; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See id. at 1429. The Tenth Circuit summarized that, in reviewing federal caselaw, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  Id.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that drug quantities used as relevant conduct to establish a defendant's offense level should be proven by clear-and-convincing evidence rather than by a preponderance of the evidence.  See 11 F.3d at 1512. Washington objected to his sentencing, because the drug quantity the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his guideline sentence range from 210 to 262 months, to life. Washington

-18-

argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." Id. at 1515.

Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," see id. at 1516, it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." Id. (citing McMillan v. Pennsylvania, 477 U.S. at 84). While the phrase "ordinary case" might suggest there are exceptions, the Tenth Circuit's remaining language suggested that it was shutting the door on that possibility. The Tenth Circuit concluded that, "[a]t least as concerns making guideline calculations[,] the issue of a higher than a preponderance standard is foreclosed in this circuit." United States v. Washington, 11 F.3d at 1516. Finally, more recent Tenth Circuit decisions -- issued subsequent to the Supreme Court's holdings in Witte v. United States and United States v. Watts -- have reaffirmed the Tenth Circuit's position regarding the sentencing court's consideration of relevant conduct. See United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that this argument was "foreclosed by binding precedent" in the Tenth Circuit); United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(same).

c.     Sixth Amendment Jurisprudence.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed

by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution limited this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Blakely v. Washington, the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (additional emphasis removed)(internal quotations and citations omitted). In United States v. Booker, the Supreme Court expanded its earlier holdings to apply to sentencing enhancements that exceeded maximum sentences under the Sentencing Guidelines. See 543 U.S. at 239 ("Regardless of whether the legal basis of the accusation is in a statute or in guidelines promulgated by an independent commission, the principles behind the jury trial right are equally applicable.").

The majority opinions in Apprendi v. New Jersey, Blakely v. Washington, and in the constitutional majority in United States v. Booker, reflect the Supreme Court's concern that sentencing enhancements based on uncharged, dismissed, and acquitted crimes may undermine, if not directly contravene, many of the fundamental components of the adversary system that the Framers intended -- specifically notice, jury trial, and proof beyond a reasonable doubt. See United States v. Booker, 543 U.S. at 238 ("[T]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbors,' rather than a lone employee of the State.")(quoting Blakely v. Washington, 542 U.S. at 313). Justice Scalia noted in Blakely v. Washington that sentencing factors cannot be elevated to

the "tail which wags the dog of the substantive offense." 542 U.S. at 307 (quoting McMillan v. Pennsylvania, 477 U.S. at 88).  Justice Scalia explained that this threshold would be crossed when legislatures -- and presumably the federal Sentencing Commission -- enact sentencing mechanisms that exceed "the judicial estimation of the proper role of the judge."  Blakely v. Washington, 542 U.S. at 307.

        In United States v. Booker, the Supreme Court expressly rejected, however, any argument that its holding was inconsistent with its earlier holding in United States v. Watts.  See United States v. Booker, 543 U.S. at 240 & 240 n.4. In his majority opinion in United States v. Booker, Justice Stevens -- joined by Justices Scalia, Souter, Thomas, and Ginsburg -- described the issue in United States v. Watts as "a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause." United States v. Booker, 543 U.S. at 240 n.4.  Justice Stevens stated that the Supreme Court in United States v. Watts "held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines,"[2] but limited the holding by pointing out that "[i]n neither Witte [v. United States] nor [United States v.] Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." United States v. Booker, 543 U.S. at 240. Justice Stevens concluded that the issue the Supreme Court confronted in United States v. Booker "simply was not presented" in United States v. Watts. United States v. Booker, 543 U.S. at 240.

        Justice Stevens' opinion in United States v. Booker asserted that the constitutional infirmity

_____

        [2]  Justice Breyer's majority opinion in United States v. Booker -- which Chief Justice Rehnquist, and Justices O'Connor, Kennedy, and Souter joined -- characterizes the scope of the holding in United States v. Watts in a very similar fashion. Justice Breyer states that the Supreme Court "held in United States v. Watts that a sentencing judge could rely for sentencing purposes upon a fact that a jury had found unproved (beyond a reasonable doubt)." United States v. Booker, 543 U.S. at 251.

of the Guidelines' sentencing regime was not in permitting judges to consider acquitted conduct, but that the Guidelines were binding on district judges. See id. at 233. The constitutional majority in United States v. Booker indicated that there would have been no Sixth Amendment constitutional violations in the cases before them if the Guidelines were advisory. See id.

Justice Thomas, writing separately in dissent in United States v. Booker reached a similar conclusion in finding that the Guidelines, as applied to Defendant Freddie Booker, were unconstitutional because they "required the judge to make findings that increased Booker's offense level beyond the Guidelines range authorized by the jury." Id. at 319 (Thomas, J., dissenting)(emphasis added). Justice Thomas also questioned the constitutionality of the preponderance-of-the-evidence standard as applied to fact finding underlying sentencing enhancements. In critiquing the commentary to U.S.S.G. § 6A1.3, which states that "the Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case," U.S.S.G. § 6A1.3 cmt., Justice Thomas countered that the Supreme Court's holding in United States v. Booker "corrects this mistaken belief," 543 U.S. at 319 n.6 (Thomas, J., dissenting). Justice Thomas continued: "The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." Id.

Consistent with this conclusion, the Supreme Court in United States v. Booker found those provisions of the Federal Sentencing Reform Act of 1984 that made the Guidelines mandatory, see 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, see 18 U.S.C. § 3742(e), incompatible with the Sixth Amendment, see United States v. Booker, 543 U.S. at 245.

Accordingly, the Supreme Court in <u>United States v. Booker</u> severed and excised 18 U.S.C. § 3553(b)(1) -- the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guideline range -- from the remainder of the Act, thus "mak[ing] the Guidelines effectively advisory." <u>Id.</u> The Supreme Court's holding in <u>United States v. Booker</u> "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." <u>Id.</u> at 245-46.

The Supreme Court has recently confirmed that an advisory guidelines system comports with the Sixth Amendment. In <u>Cunningham v. California</u>, 127 S. Ct. 856 (2007), Justice Ginsburg, joined by the other four justices who had been part of the constitutional majority in <u>United States v. Booker</u> and Chief Justice Roberts, noted that, despite disagreement over the most appropriate method to remedy the mandatory Guidelines' constitutional infirmity, all nine justices that took part in the <u>United States v. Booker</u> decision agreed that "the Federal Guidelines would not implicate the Sixth Amendment were they advisory." <u>Cunningham v. California</u>, 127 S.Ct. at 866. The only other member of the current Supreme Court that did not participate in the <u>United States v. Booker</u> decision, Justice Alito, also acknowledged in <u>Cunningham v. California</u> that the Supreme Court in <u>United States v. Booker</u> "unanimously agreed that judicial factfinding under a purely advisory guidelines system would . . . comport with the Sixth Amendment." <u>Cunningham v. California</u>, 127 S. Ct. at 874 (Alito, J., dissenting.).

Not only did making the Guidelines advisory remedy the Supreme Court's Sixth Amendment concerns, it seems to have alleviated the constitutional concerns regarding the appropriate burden of proof that existed under the mandatory system. A person who is found guilty of a crime beyond a reasonable doubt is exposed to the maximum punishment the statute of conviction allows, rather than the maximum allowed under the Guidelines, and it is therefore constitutional to sentence the guilty

defendant any where within the range based on facts proved only by a preponderance of the evidence. See, e.g., Harris v. United States, 536 U.S. 545, 558 (2002)("Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments."). Nevertheless, since United States v. Booker, at least one United States Circuit Judge and several United States District Judges have concluded that sentencing based upon conduct for which the defendant was acquitted is unconstitutional. See United States v. Faust, 456 F.3d 1342, 1352 (11th Cir. 2006)(Barkett, J., specially concurring)("When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law -- that is, when an enhancement factor could have been named in the indictment as a complete criminal charge -- the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt."); United States v. Coleman, 370 F. Supp. 2d 661, 671 (S.D. Ohio 2005)(Marbley, J.)("[T]he jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized and unauthorized conduct.")(emphasis in original); United States v. Pimental, 367 F.Supp.2d 143, 152 (D. Mass. 2005)(Gertner, J.)("To consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' -- which is what a jury decides -- in a way that is inconsistent with the tenor of the recent case law."); Judge Nancy Gertner, Circumventing Juries, Undermining Justice: Lessons from Criminal Trials and Sentencing, 32 Suffolk U. L. Rev. 419, 436 (1999)("Actual innocence or actual guilt is less significant in a constitutional criminal justice system than legal guilt or legal innocence, adjudicated by a jury.")(hereinafter Circumventing Juries).

        In United States v. Pimental, the Honorable Nancy Gertner, United States District Judge for the District of Massachusetts, discussed at length the federal sentencing scheme in the post Blakely v. Washington and United States v. Booker environment, and called for judges to apply a "beyond

a reasonable doubt" standard to relevant conduct.  United States v. Pimental, 367 F. Supp. 2d at 153.

According to Judge Gertner, both the plain language and reasoning of United States v. Booker

"substantially undermines the continued vitality of United States v. Watts." United States v. Pimental,

367 F. Supp. 2d at 150. Judge Gertner observed that "it makes absolutely no sense to conclude that

the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a

judge rather than a jury, . . . and also conclude that the fruits of the jury's efforts can be ignored with

impunity by the judge in sentencing." United States v. Pimental, 367 F. Supp. 2d at 150 (internal

citation omitted).  Judge Gertner's discussion was premised on her view that "[t]he jury is intended

to be the centerpiece of the criminal justice system." United States v. Pimental, 367 F. Supp. 2d at

150.  Quoting from her law review article, Judge Gertner stated that, determining "more than actual

truth, guilt, or innocence, its decisions represent a popular conception of a 'just verdict.'" Id. (quoting

Circumventing Juries at 433). Judge Gertner argued in United States v. Pimental that, "when a jury

acquit[s] a defendant based on [the beyond a reasonable doubt] standard, one would have expected

no additional criminal punishment would follow." United States v. Pimental, 367 F. Supp. 2d at 150

(quoting Circumventing Juries at 433). According to Judge Gertner, this expectation is "a matter of

simple justice." United States v. Pimental, 367 F. Supp. 2d at 150 (quoting Apprendi v. New Jersey,

530 U.S. at 476.).

Judge Gertner concluded that her findings were consistent with Justice Stevens' principal

opinion in United States v. Booker, but found that "this position, that one can consider acquitted

conduct because the Guidelines are now advisory, seems to hark back to the period pre-mandatory

Guidelines." United States v. Pimental, 367 F. Supp. 2d at 151.

> What the judge did in sentencing [before the Guidelines] -- a specialized, professional
> function -- was totally different from what the jury did. There was no Sixth
> Amendment issue, or even the requirement of full evidentiary safeguards because

> sentencing facts did not have binding and determinate consequences. Thus, just as
> during the pre-Guidelines discretionary sentencing regime, when a judge could
> consider acquitted conduct in the mix of sentencing facts, so he or she can do so now
> after [United States v.] Booker.

Id. at 151-52. Judge Gertner distinguished this earlier sentencing regime from sentencing under the

mandatory Guidelines, because "while pre-Guideline data may have included acquitted conduct in

the mix of sentencing factors, such data did not have quantifiable consequences; in a guideline

regime, each fact has a determinate impact." United States v. Pimental, 367 F. Supp. 2d at 152 n.16

(quoting Circumventing Juries at 433).

Judge Gertner described the current status of federal sentencing law as a hybrid system

embodying elements of the purely discretionary pre-Guidelines sentencing and elements of the

mandatory rule-based Guidelines sentencing. See United States v. Pimental, 367 F. Supp. 2d at 152.

In Judge Gertner's estimation, the nature of this system "has certain consequences in terms of the

significance of acquitted conduct, and more generally, the procedural protections at sentencing." Id.

These consequences derive from the fact that "when a court considers acquitted conduct it is

expressly considering facts that the jury verdict not only failed to authorize; it considers facts of

which the jury expressly disapproved." Id.  Judge Gertner also criticized the distinction jurists have

made between the jury's role of deciding guilt and the judge's task of deciding facts. Judge Gertner

contended that this distinction is disingenuous "in this hybrid regime where rules still matter, and

certain facts have important, if not dispositive, consequences." Id. at 153. Judge Gertner summarized:

"To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to

ignore the fruits of its efforts makes no sense -- as a matter of law or logic." Id.

As a result of her concern for the integrity of jury verdicts, Judge Gertner reasoned: "Even

if [United States v.] Watts emerged unscathed from [United States v.] Booker, and a judge may

-26-

consider all facts, including acquitted conduct, the standard of proof to be applied should be beyond a reasonable doubt." United States v. Pimental, 367 F. Supp. 2d at 153. Because "[c]ertain facts . . . continue to assume inordinate importance in the sentencing outcome," Judge Gertner concluded in United States v. Pimental that "they should be tested by our highest standard of proof." Id.

As a final point, Judge Gertner asserted that, "[i]ndeed, even if the Sixth Amendment's jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth Amendment's Due Process requirement is." Id. Judge Gertner concluded:

> We cannot have it both ways: We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.

Id. at 154.

In United States v. Coleman, 370 F. Supp. 2d 661 (S.D. Ohio 2005), the Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, took a position similar to Judge Gertner in United States v. Pimental. Judge Marbley acknowledged in United States v. Coleman that, "[i]n interpreting the practical effects of the two majority opinions in [United States v.] Booker, most courts agree that judicial fact-finding may be made by a preponderance of the evidence so long as the court is operating in an advisory regime." United States v. Coleman, 370 F. Supp. 2d at 667. Judge Marbley disagreed with this conclusion and indicated that, in his opinion, all enhancements should be determined under the beyond a reasonable-doubt standard. See id. at 668. Nevertheless, because of what he described as compelling dicta from the United States Court of Appeals for the Sixth Circuit, and a "multi-circuit consensus," Judge Marbley stated that he would "continue to review enhancements, with the exception of those relating to acquitted conduct, by a

preponderance of the evidence." Id.

Judge Marbley recognized conduct for which the defendant has been acquitted as exceptional circumstances and asserted that "the beyond a reasonable doubt standard reflects the seriousness of the determinations made within the criminal justice system, as opposed to the civil system." Id. at 668 n.8 (citing United States v. Gray, 362 F. Supp. 2d 714, 720 (S.D. W. Va. 2005)). This assertion reflected Judge Marbley's understanding that, "[t]o the extent that an enhancement detracts from a defendant's liberty, its imposition should be considered with extreme scrutiny." Id.

Similar to Judge Gernter in United States v. Pimental, Judge Marbley's analysis in United States v. Coleman was premised on his view that assessing conduct for which the defendant was acquitted against a standard less than beyond a reasonable doubt eviscerated a criminal defendant's Sixth Amendment right to a jury trial. See United States v. Coleman, 370 F. Supp. 2d at 668. Judge Marbley acknowledged that, in United States v. Watts, the Supreme Court had expressly authorized sentencing courts to consider acquitted conduct under a preponderance-of-the-evidence standard, but agreed with Judge Gertner that "[t]he viability of [United States v.] Watts . . . was questioned by Justice Stevens' constitutional majority opinion in [United States v.] Booker." United States v. Coleman, 370 F. Supp. 2d at 669.  In United States v. Coleman, Judge Marbley noted Justice Stevens' narrow interpretation of the Supreme Court's holding in United States v. Watts, and the Justice's observation that, because the Supreme Court "did not even have the benefit of full briefing or oral argument" in United States v. Watts, "[i]t is unsurprising that [the Supreme Court] failed to consider fully the issues presented" in United States v. Booker. United States v. Coleman, 370 F. Supp. 2d at 669 (quoting United States v. Booker, 543 U.S. at 240 n.4).

Judge Marbley contended that United States v. Booker, read in the context of its predecessors -- Jones v. United States, 526 U.S. 227 (1999), Apprendi v. New Jersey, Ring v. Arizona, 536 U.S.

584 (2002), and <u>Blakely v. Washington</u> -- detracts from <u>United States v. Watts</u>' continued validity. <u>See</u> <u>United States v. Coleman</u>, 370 F. Supp. 2d at 670. Judge Marbley interpreted this line of cases to stand for the proposition that "a judge's determination at sentencing must be guided by the jury authorized verdict." <u>Id.</u>  According to Judge Marbley in <u>United States v. Coleman</u>, even Justice Breyer's remedial opinion in <u>United States v. Booker</u> was not inconsistent with this conclusion, because it "limit[ed] sentences to the jury-authorized statutory maximum," as the United States Code defines that sentence.  <u>United States v. Coleman</u>, 370 F. Supp. 2d at 670.

With this background, Judge Marbley found it paradoxical that Supreme Court caselaw had "elevated the role of the jury verdict by circumscribing a defendant's sentence to the relevant statutory maximum authorized by a jury; yet, the jury's verdict is not heeded when it specifically withholds authorization."  <u>Id.</u>  Judge Marbley then stated that he was unpersuaded by courts, including the Tenth Circuit, that have attempted to resolve this paradox, and thereby reconcile the holding of <u>United States v. Watts</u> with more recent jurisprudence, "by focusing solely on the narrow remedial holding of Justice Breyer's opinion" in <u>United States v. Booker</u>.  <u>United States v. Coleman</u>, 370 F. Supp. 2d at 670-71.

In reaching this conclusion, Judge Marbley was critical of the Tenth Circuit's decision in <u>United States v. Magallanez</u>, 408 F.3d 672 (10th Cir. 2005), a case in which the Tenth Circuit upheld a sentence enhanced on the basis of conduct for which the defendant was acquitted despite acknowledging a perceived tension in a court's consideration of such conduct. The Tenth Circuit in <u>United States v. Magallanez</u> admitted:

> The defendant in this case might well be excused for thinking that there is something amiss, under this constitutional principle, with allowing the judge to determine facts on which to sentence him to an additional 43 months in prison in the face of a jury verdict finding facts under which he could be required to serve no more than 78 months.

Id. at 683. Despite this recognition, Judge Marbley, in United States v. Coleman, characterized the Tenth Circuit's holding in United States v. Magallanez as "upholding the sentence because [United States v.] Booker did not sever 18 U.S.C. § 3661" -- the provision which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  United States v. Coleman, 370 F. Supp. 2d at 671 (quoting 18 U.S.C. § 3661).

Judge Marbley was also critical of the Tenth Circuit's limited discussion of the perceptions that courts' use of conduct for which a defendant was acquitted engender.

> Although the statement about the defendant's perception of his sentence is made in passing by the [Tenth Circuit] in [United States v.] Magallanez, this Court notes that consideration of acquitted conduct has a deleterious effect on the public's view of the criminal justice system. A layperson would undoubtedly be revolted by the idea that, for example, a "person's sentence for crimes of which he has been convicted may be multiplied fourfold by taking into account conduct of which he has been acquitted." United States v. Frias, 39 F.3d 391, 393 (2d Cir. 1994)(Oakes, J., concurring). As Judge Oakes opined, "this is jurisprudence reminiscent of Alice in Wonderland . . . As the Queen of Hearts might say, "Acquittal first, sentence afterwards." Id. See also Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers, 101 Yale L.J. 1681, 1714 (1992)("Most lawyers, as well as ordinary citizens unfamiliar with the daily procedures of criminal law administration, are astonished to learn that a person in this society may be sentenced to prison on the basis of conduct of which a jury has acquitted him, or on the basis of charges that did not result in conviction.").

United States v. Coleman, 370 F. Supp. 2d at 671 n.14.  Because Judge Marbley found that "the jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized and unauthorized conduct," he found the Tenth Circuit's reasoning in United States v. Magallanez unpersuasive.  United States v. Coleman, 370 F. Supp. 2d at 671.

Judge Marbley also recognized collateral consequences of enhancing sentences based on acquitted conduct. He noted that enhancements "would not only affect Defendants' liberty by

lengthening the sentences imposed, but would also result in the 'heightened stigma associated with an offense the legislature has selected as worthy of greater punishment.'" United States v. Coleman, 370 F. Supp. 2d at 672 (quoting Apprendi v. New Jersey, 530 U.S. at 467).  Judge Marbley stated that, by so using enhancements, "[t]he legal innocence associated with acquittal would be summarily eviscerated."  Id.  Moreover, Judge Marbley contended that "consideration of acquitted conduct skews the criminal justice system's power differential too much in the prosecution's favor."  United States v. Coleman, 370 F. Supp. 2d at 672. In Judge Marbley's view, consideration of acquitted conduct permitted the prosecution "a second bite at the apple," and "allow[ed] the government to perfect its case and ready it for re-litigation at the sentencing 'mini-trial.'"  Id.

Finally, Judge Marbley acknowledged that his result was not without any potential drawbacks. Judge Marbley stated that he was "cognizant that a negative consequence of refusing to consider acquitted conduct is the possibility that 'eliminating the availability of acquitted conduct evidence at sentencing might alter prosecutorial charging decisions.'"  Id. at 673 (internal quotation omitted). This potential result is because prosecutors might decline to bring certain charges because they fear those charges may result in acquittal and, instead, wait to bring facts supporting those charges to the court's attention as relevant conduct at sentencing.  See id.  While Judge Marbley refused to minimize the import of this concern, he argued that "it simply does not justify overriding jury verdicts of acquittal." Id.

Despite these concerns that judges around the nation have raised, the Tenth Circuit has spoken clearly that it does not agree with their position.  In United States v. Magallanez, one of the cases that Judge Marbley criticized in United States v. Coleman, the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis, and that United States v. Watts retained vitality. See United States v. Magallanez, 408 F.3d

at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Pete Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See id. at 676. As part of its verdict, the jury, through special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines. See id. at 682. The district court's findings increased the defendant's Guideline sentencing range from 63 to 78 months to 121 to 151 months. See id. at 682-83.

Magallanez argued that the district court's additional findings with respect to the amount of drugs attributable to him violated Blakely v. Washington. See id. at 683. On appeal, Magallanez argued that Blakely v. Washington and United States v. Booker required the district court to accept the jury's special finding of drug quantity for sentencing purposes.  See United States v. Magallanez, 408 F.3d at 683.

The Tenth Circuit in United States v. Magallanez admitted that, "[a]t first blush, there might seem to be force to [Magallanez'] argument," and noted that "[t]he constitutional violation identified in Blakely [v. United States] and [United States v.] Booker, after all, was the Sixth Amendment right to trial by jury." United States v. Magallanez, 408 F.3d at 683. The Tenth Circuit countered, however, that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." Id. at 684. The Tenth Circuit in United States v. Magallanez cited United States v. Watts and stated that, in that case, it was significant that the Supreme Court had held that the Ninth Circuit's decisions conflicted not only with the Sentencing

Guidelines, but with the "clear implications of 18 U.S.C. § 3661." United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 149). The Tenth Circuit reasoned that, because the Supreme Court had stated, in United States v. Watts, that the Guidelines did not alter the unlimited nature of the information 18 U.S.C. § 3661 authorized sentencing courts to consider, "it follows that the [Supreme] Court's partial invalidation of the Guidelines in [United States v.] Booker could not have altered it, either." United States v. Magallanez, 408 F.3d at 684 (citing United States v. Watts, 519 U.S. at 152).

The Tenth Circuit supported its conclusion by arguing that the decision in United States v. Watts "was predicated on the rationale that 'different standards of proof . . . govern at trial and sentencing.'" United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 155). The Tenth Circuit continued by acknowledging the Supreme Court's recognition in United States v. Watts that "[a]n acquittal by the jury proves only that the defendant was not guilty beyond a reasonable doubt," and that "[b]oth before and under the Guidelines, facts relevant to sentencing have generally been found by a preponderance of the evidence." United States v. Magallanez, 408 F.3d at 684 (citing United States v. Watts, 519 U.S. at 156). Consistent with this interpretation of United States v. Watts, the Tenth Circuit held that "[a] jury verdict of acquittal on related conduct, therefore, 'does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.'" United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 157).

In a footnote to its opinion in United States v. Magallanez, the Tenth Circuit acknowledged Justice Stevens' language in United States v. Booker -- the language that Judge Marbley references in United States v. Coleman -- that calls into question the vitality of United States v. Watts after the Supreme Court's decision in United States v. Booker.  See United States v. Magallanez, 408 F.3d at

-33-

684 n.1. The Tenth Circuit concluded, however, that, because Justice Stevens, in United States v. Booker, distinguished United States v. Watts, and stated that "[n]one of our prior cases is inconsistent with today's decision," United States v. Booker, 543 U.S. at 241, United States v. Watts "remains good law, and it is not the place of an inferior court to overrule it," United States v. Magallanez, 408 F.3d at 684 n.1. Consequently, the Tenth Circuit concluded "[n]othing in [United States v.]Booker changes this analysis." United States v. Magallanez, 408 F.3d at 684.

To the contrary, the Tenth Circuit noted that, "18 U.S.C. § 3661, which underlay the decision in [United States v.]Watts, remains in full force." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker made the Guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685 (internal citation omitted). In the Tenth Circuit's estimation, "the only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline ranges." Id.

**4.     The Categorical Approach.**

In a series of cases, the Supreme Court has provided guidance to sentencing courts on how to determine whether a defendant has been convicted of a "violent felony" under the Armed Career Criminal Act ("ACCA").   In the first case, Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court considered whether sentencing courts may examine evidence beyond the statutory definitions of a conviction to determine if it satisfies the predicate-crime requirement.  See id. at 600. Recognizing that states often employ varying definitions for crimes, the Supreme Court held that sentencing courts must use the "categorical approach" in determining whether a state conviction for "burglary" constitutes an ACCA predicate offense, looking only to the statutory definitions of the

prior offenses, and not to the particular facts underlying those convictions. 495 U.S. at 600.

Furthermore, in United States v. Sanchez-Garcia, 501 F.3d 1208 (10th Cir. 2007), the Tenth Circuit held that, "[t]o determine whether a prior offense is a crime of violence under § 16(b), we apply the categorical approach outlined in Taylor v. United States." 501 F.3d at 1211 (internal citations and quotations omitted).  Under this approach, the Tenth Circuit examines "only the elements of the statute of conviction and disregard[s] the specific factual circumstances underlying the defendant's prior offense."  United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Lucio-Lucio, 347 F.3d 1202, 1204 (10th Cir. 2003).  "Accordingly, for a prior offense to be a crime of violence under § 16(b), the 'substantial risk' of 'physical force' must inhere in the elements of the prior offense rather than from the specific conduct in which the defendant engaged." United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Frias-Trujillo, 9 F.3d 875, 877 (10th Cir. 1993)("There is no indication that Congress intended that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case.")(internal quotations omitted).  While the court is prohibited from examining the underlying facts of the charged crime, it "may take into account certain records of the prior conviction, such as the charging document and comparable judicial records, if the statutory definition of the prior offense is 'ambiguous on its face because it reaches different types of conduct under different sets of elements.'"  United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 n.1).  This examination does not involve "a subjective inquiry as to whether [the] particular factual circumstances [underlying the conviction] involve a risk of violence." McCann v. Rosquist, 185 F.3d 1113, 1117 n.4 (10th Cir. 1999), vacated on other grounds, 529 U.S. 1126 (2000).  Rather, the court "simply examine[s] these documents to determine which 'part of the statute was charged against the [d]efendant' and thus 'which portion of the statute to examine on its

face.'" United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d at 1275 n.1.)

The purpose of the categorical approach is to avoid conducting "a fact finding inquiry, thereby sparing [the sentencing court] from conducting mini-trials on prior offenses which have already been adjudicated." United States v. Austin, 426 F.3d 1266, 1270 (10th Cir. 2005). See Taylor v. United States, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting."). Under the categorical approach, courts should look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. at 600. Sentencing courts, moreover, should steer clear of the "exact definition or label" of the conviction, and instead should focus on the "basic elements" of the conviction. Id. at 599. If the statutory elements are consistent with the generic elements of a crime of violence, then the conviction satisfies a violent felony. See id. at 599-600.

In two subsequent cases, the Supreme Court has reaffirmed this approach. In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court applied the categorical approach for convictions based on guilty pleas and, not only on convictions after a trial. See id. at 23. And recently, in James v. United States, 127 S.Ct. 1586 (2007), the Supreme Court reaffirmed the categorical approach under the ACCA, applying it to convictions for attempted burglary. See id. at 1593-94. In James v. United States, the Supreme Court reasoned that the categorical approach does not require that "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." Id. at 1597.

> [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . . But that does not mean that the offense[] . . . [is] categorically nonviolent.

Id.

The fact of conviction is the important factor in assessing the application of the categorical approach. In a "narrow range of cases," however, the Supreme Court authorized looking beyond the statutory elements of a conviction. Taylor v. United States, 495 U.S. at 602. First, "where a statute is ambiguous (i.e., reaches different types of conduct) and a defendant's conviction followed a jury trial, the court may look to charging documents and jury instructions to determine if the actual offense the defendant was convicted of qualifies as a crime of violence." United States v. Moore, 420 F.3d 1218, 1220 (10th Cir. 2005)(citing Taylor v. United States, 495 U.S. at 602). Second, "[w]here the statute is ambiguous and the defendant was convicted by a guilty plea, the court can review the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." United States v. Moore, 420 F.3d at 1220 (citing Shepard v. United States, 544 U.S. at 16).

Generally, in determining whether a prior conviction was for a "crime of violence" under U.S.S.G. § 2L1.2, the "categorical approach" is used. United States v. Martinez-Hernandez, 422 F.3d 1084, 1086-87 (10th Cir. 2005). This categorical approach entails looking at "the elements of the [state] statute under which [the defendant] had been convicted," id. at 1086, to determine whether those elements require "the use, attempted use, or threatened use of physical force against the person of another." Id.

The recent case of United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), sets out the Tenth Circuit's analysis in cases with enhancements based on statutes that are unclear regarding the element of force. The Tenth Circuit in United States v. Perez-Vargas cited to the Supreme Court's opinion in Taylor v. United States, and stated that, in applying Taylor v. United States, the Tenth Circuit has held that, "if the statute is ambiguous, or broad enough to encompass both violent

-37-

and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court." United States v. Perez-Vargas, 414 F.3d at 1284 (internal citations and quotations omitted). The Tenth Circuit in United States v. Perez-Vargas also quoted Shepard v. United States, stating that, "when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, 'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable judicial record of this information.'" United States v. Perez-Vargas, 414 F.3d at 1284 (quoting Shepard v. United States, 125 S.Ct. at 1262). The court may also rely on any admissions the defendant has made regarding the facts of the prior conviction. United States v. Perez-Vargas, 414 F.3d at 1285.

Thus, if a sentencing court determines from the statutory definitions of convictions that the crime is a felony, and includes the use or threatened use of force, the inquiry ends, and the crime is categorized as one of violence.  See United States v. Taylor, 495 U.S. at 600-601. If the statute is ambiguous, the supporting documents approved in United States v. Taylor and Shepard v. United States are reviewed to determine if there was a qualifying conviction for a crime involving the use or threatened use of violence.  See Shepard v. United States, 125 S.Ct. at 1259; United States v. Dwyer, 245 F.3d 1168, 1171 (10th Cir.2001).  While United States v. Taylor and Shepard v. United States involved burglary convictions and pleas, the Tenth Circuit has applied the categorical approach to a broader array of issues.  See, e.g.,  United States v. Nevels, 490 F.3d 800, 807-808 (10th Cir. 2007)(applying categorical approach to juvenile convictions); United States v. Harris, 447 F.3d 1300, 1304-1305 (10th Cir. 2006)(applying categorical approach to ACCA "separateness of prior crimes" inquiry); United States v. Moore, 420 F.3d 1218, 1220 (10th Cir. 2005)(applying categorical

approach to U.S.S.G. § 4B1.2 "crime of violence" enhancement); United States v. Begay, 470 F.3d 964, 967-75 (10th Cir. 2005)(applying categorical approach in holding that a DUI is a "violent felony" under the ACCA), cert. granted, 128 S.Ct. 32 (2007)).

Under Leocal v. Ashcroft, 543 U.S. 1 (2004), to be a crime of violence, there must be active employment of physical force. See id. at 9. The Supreme Court noted that the "use" -- as in "has as an element the use, or threatened use" -- "requires active employment." Id. The Supreme Court explained:

> While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him.

Id. The Supreme Court went on to hold that a Florida statute that required only proof "that the person acted negligently in operating [a motor] vehicle," does not qualify as a 'crime of violence' under § 16(a). Id. at 10. The Supreme Court noted that the "use . . . of physical force" language employed in 18 U.S.C. § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal v. Ashcroft, 543 U.S. at 2.

The Court is unaware of a case in which the Tenth Circuit has specifically ruled that reckless conduct is not a crime of violence. In United States v. Perez-Vargas, however, the Tenth Circuit listed several actions that would not involve use or threatened use of physical force and indicated the mens rea behind such actions: "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." 414 F.3d at 1286. The United States Courts of Appeals for the Third, Fourth, Fifth, Sixth, and Ninth Circuits have, however, all held that reckless conduct is not a crime of violence. See United States v. Portela, 469 F.3d 496, 499 (6th Cir. 2006); United States v. Villegas-Hernandez,

468 F.3d 874, 882 (5th Cir. 2006); <u>Fernandez-Ruiz v. Gonzales</u>, 466 F.3d 1121, 1130 (9th Cir. 2006);

<u>Overbanji v. Gonzales</u>, 418 F.3d 260, 261 (3d Cir. 2005); <u>Singh v. Gonzales</u>, 432 F.3d 533, 540 (3d

Cir. 2006); <u>Bejarno-Urrutia v. Gonzales</u>, 413 F.3d 444, 445 (4th Cir. 2005).  The Court finds the

reasoning of these other Circuits to be persuasive and will follow this precedent.

Recently, the Tenth Circuit explained that a conviction for assault two (drugging a victim),

under Colorado law, is not a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  <u>See</u> <u>United</u>

<u>States v. Rodriguez-Enriquez</u>, No. 07-2033, 2008 WL 624433 at * 1 (10th Cir. March 10, 2008).

Under Colorado law,

> [a] person commits the offense of assault two (drugging a victim) if "[f]or a purpose
> other than lawful medical or therapeutic treatment, he intentionally causes stupor,
> unconsciousness, or other physical or <u>mental impairment</u> or injury to another person
> by administering to him, without his consent, a drug, substance, or preparation
> capable of producing the intended harm."

2008 WL 624433 at * 1 (quoting Colo. Rev. Stat. Ann. § 18-3-203(1)(e))(emphasis in original).  The

Tenth Circuit explained: "Even if we were to agree that drugging involves the use of <u>force</u>, we must

still decide what is added by the adjective <u>physical</u>."  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL

624433 at * 2 (emphasis in original).  The Tenth Circuit "reject[ed] the view that the word <u>physical</u>

relates to the effect of the force, because if the word has that meaning, it adds nothing to the

Guideline definition of crime of violence."  <u>Id.</u> at *3 (emphasis in original).

The Tenth Circuit in <u>United States v. Rodriguez-Enriquez</u> decided that "the adjective <u>physical</u>

must refer to the mechanism by which the force is imparted to the person of another."  <u>Id.</u> at *3

(emphasis in original).  The Tenth Circuit explored the meaning of physical force by asking:

> In what circumstances, then, are we likely to think of the force as being generated by
> <u>physical</u> means?  When someone is struck by a fist, a bat, a projectile, we have no
> difficulty in characterizing the force against the person as physical.  In those instances
> the force on the victim is generated mechanically.  Kinetic energy from the fist, bat,
> or projectile is transferred to the body of the victim.  Although the matter is far from

certain, the absence of colorable alternative meanings for <u>physical</u> suggest that it is
the presence of this mechanical impact that defines when force is physical.   In
contrast, the effect of poison on the body is achieved by chemical action, not by
mechanical impact.

<u>Id.</u> at * 4 (emphasis in original).  The Tenth Circuit revisited its opinion in <u>United States v. Perez-

Vargas</u> and noted that it had previously observed that "'intentionally exposing someone to hazardous

chemicals'" would not be a crime of violence.   <u>United States v. Rodriguez-Enriquez</u>, 2008 WL

624433 at * 4 (internal quotations omitted)(quoting <u>United States v. Perez-Vargas</u>, 414 F.3d  1282,

1286-87 (10th Cir. 2005)).

The Tenth Circuit noted in <u>United States v. Rodriguez-Enriquez</u> that, "[a]lthough there is no

doubt that one could use physical force to drug someone, as by forcing a drink down the victim's

throat, drugging by surreptitious means does not involve the use of physical force."  <u>Id.</u> at *5.  The

Tenth Circuit explained that the Colorado statute criminalized "harm caused by the nonconsensual

administration of a drug, substance or preparation [--] [t]he harm . . . caused by chemical action on

the victim's body."  <u>Id.</u> at *4 (internal quotations omitted).  The Tenth Circuit concluded by noting

that

[a] sentencing judge may, for proper reasons, depart from the Guideline range; and
under <u>Gall v. United States</u>, 128 S.Ct. 586 (2007), the judge has discretion to vary
from that range.  In exercising that discretion the judge is not bound by what may
seem to be an artificial distinction between shooting a victim and poisoning him.

<u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at * 5.

"When a defendant contests whether a prior conviction is a crime of violence, the sentencing

court is generally required to follow the 'categorical approach' as adopted in <u>Taylor v. United

States</u>."  <u>United States v. Romero-Hernandez</u>, 505 F.3d 1082, 1085 (10th Cir. 2007)(citing <u>United

States v. Perez-Vargas</u>, 414 F.3d at 1284). "The categorical approach requires the sentencing court

to look 'only to the statutory definitions of the prior offenses, and not to the particular facts

underlying those convictions.'" United States v. Romero-Hernandez, 505 F.3d at 1085-86 (quoting United States v. Perez-Vargas, 414 F.3d at 1284). "But when an examination of the statute reveals that the statute 'reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records.'" United States v. Romero-Hernandez, 505 F.3d at 1086 (quoting United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir.2005)). "At this stage, the analysis is referred to as the modified categorical approach." United States v. Romero-Hernandez, 505 F.3d at 1086 (citing Gonzales v. Duenas-Alvarez, --- U.S. ----, 127 S.Ct. 815, 819 (2007). In applying the modified categorical approach, the court is limited to examining "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard v. United States, 544 U.S. at 26.

## LAW REGARDING VARIANCES FROM ADVISORY GUIDELINE SENTENCES UNDER UNITED STATES V. BOOKER

In United States v. Booker, the Supreme Court severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute  . . .  shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s]

-43-

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, and is not one that the trial court can or should apply.  See Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007); Rita v. United States, 127 S. Ct. at 2463.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. at *591; Kimbrough v. United States, 128 S.Ct. at 564.

## TEXAS LAW REGARDING SECTION 22.04

Section 22.04 of the Texas Penal Code defines the crime of "Injury to a Child, Elderly Individual or Disabled Individual" as the follows:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

(1) serious bodily injury;

(2) serious mental deficiency, impairment, or injury; or

(3) bodily injury.

Tex. Penal Code Ann. § 22.04.  One court has noted that section 22.04 is "results-oriented in that the culpable mental state must relate to the result of a defendant's conduct rather than to the conduct itself." United States v. Gracia-Cantu, 302 F.3d 308, 311-12 (5th Cir. 2002)(citing Patterson v. State, 46 S.W.3d 294, 301 (Tex. App.–Fort Worth 2001)).

-44-

## ANALYSIS

The Court will follow the guidance of case law and will decide whether the United States has proven that Farias-Guijarro has committed a crime of violence by a preponderance of the evidence. Using a preponderance of the evidence standard, the Court finds, under United States v. Taylor and Shepard v. United States, that Farias-Guijarro's prior conviction is a crime of violence and thus warrants the 16-level increase assessed in the PSR. The Court will allow paragraph 21 of the PSR to remain and will consider it in its Booker analysis. The Court does not believe that Farias-Guijarro's case counsels for a variance and thus will sentence him, at the low-end of the Guideline range, to 41-months imprisonment.

## I. THE COURT WILL DECIDE WHETHER FARIAS-GUIJARRO COMMITTED A CRIME OF VIOLENCE BY THE PREPONDERANCE-OF-THE-EVIDENCE STANDARD.

Farias-Guijarro argues that, when a prior felony conviction results in a substantial enhancement to a criminal defendant's Guideline sentence, due process dictates that the United States establish the fact of a prior conviction by clear-and-convincing evidence. See Sentencing Memorandum at 2. Farias-Guijarro notes that prior Tenth Circuit decisions require that the United States must establish the fact of prior conviction only by a preponderance of the evidence. See Sentencing Memorandum at 2 (citing United States v. Cooper, 375 F.3d at 1052). Farias-Guijarro contends, however, that, while due process is generally satisfied by using a preponderance-of-the-evidence standard to prove sentencing factors, "'when a sentencing factor has an extremely disproportionate effect on the sentence, the government must prove the sentencing enhancement by clear and convincing evidence.'" Sentencing Memorandum at 2 (quoting United States v. Bonilla-Montenegro, 331 F.3d 1047, 1049-50 (9th Cir. 2003); United States v. Snellenberger, 493 F.3d at 1020 (noting "the government's evidentiary burden of clearly and unequivocally establishing the

facts underlying a prior conviction so as to justify the enhancement of a criminal sentence")).  Farias-Guijarro contends that, while United States v. Snellenberger and United States v. Bonilla-Montenegro are Ninth Circuit opinions, they do not conflict with United States v. Cooper's holding, because United States v. Cooper did not specifically address the question of what standard of proof is required to comport with due process when the prior conviction drastically increases a criminal defendant's Guideline sentence.  See Sentencing Memorandum at 2.  Farias-Guijarro argues that, because his 2006 conviction for "Injury to a Child, Elderly Individual, or Disabled Individual" increases his sentence from a base offense level 8 to a base offense level 24, it is incumbent on the United States to prove the existence and validity of the prior felony conviction by clear and convincing evidence.  Id. at 2-3.

The Court does not agree with Farias-Guijarro's assessment that his prior conviction must be proven by clear-and-convincing evidence.  The Court believes that the Tenth Circuit's decision in United States v. Cooper, as well as in other cases, indicates that the necessary standard to prove prior convictions is by a preponderance of the evidence.  See 375 F.3d at 1052.  Furthermore, on prior occasions, the Court has found that the United States must prove the fact of relevant conduct by a preponderance of the evidence.  See United States v. Vigil, No. 05-2051, Memorandum Opinion and Order, filed February 13, 2007 (Doc. 451); United States v. Zuni, No. 05-2369, Memorandum Opinion and Order, filed March 5, 2007 (Doc. 111).  The Court does not believe that there is a material difference between relevant conduct and prior convictions that warrants the use of a different standard of proof.

In United States v. Watts, the Supreme Court acknowledged "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." United States v. Watts, 519 U.S. at 156. In footnote two, the Supreme Court cited cases from the Supreme Court and from the

First, Second, Third, Seventh, Eighth, Ninth, and the District of Columbia Circuits that suggested that clear-and-convincing evidence might be required for judicial findings that result in extraordinary sentence enhancements. See id. at 156 n.2. The Tenth Circuit has rejected a higher standard and created a split in the circuits.  See United States v. Washington, 11 F.3d at 1516 ("At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit.").

Furthermore, although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," see id. at 1516, it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard," id. (citing McMillan v. Pennsylvania, 477 U.S. at 84).  Finally, more recent Tenth Circuit decisions -- issued subsequent to the Supreme Court's holdings in Witte v. United States and United States v. Watts -- have reaffirmed the Tenth Circuit's position regarding the sentencing court's consideration of relevant conduct.  See United States v. Valdez, 225 F.3d at 1143 n.2 (rejecting the defendant's argument that a dramatic increase in sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing and noting that this argument was "foreclosed by binding precedent" in the Tenth Circuit); United States v. Constantine, 263 F.3d at 1125 n.2 (same).

Thus, based upon the Court's prior opinions and Tenth Circuit precedent, the Court believes that the United States need only prove Farias-Guijarro's prior conviction by a preponderance of the evidence.

## II.   THE COURT WILL OVERRULE FARIAS-GUIJARRO'S OBJECTION TO PARAGRAPH 21 OF THE PSR.

Because Farias-Guijarro sets forth a legal challenge to the classification of his prior conviction as a crime of violence, his legal challenge carries with it a challenge to any factual findings that are necessarily contrary to the legal challenge.  See United States v. Martinez-Hernandez, 422 F.3d 1084, 1089 (10th Cir. 2005).  Thus, Farias-Guijarro objects to the inclusion of the factual recitation in paragraph 21 of the PSR.  Farias-Guijarro does not admit to any underlying facts set forth in paragraph 21. Specifically, Farias-Guijarro objects to paragraph 21 of the PSR to the extent that its factual contents will be used to determine whether a 16-level enhancement should be assessed to his criminal offense level score.  See Transcript of Hearing at 19:3-10 (taken January 24, 2008) ("Tr.")(Robbenhaar).[3]  Farias-Guijarro argues that Shepard v. United States precludes the Court from looking at paragraph 21 for the purposes of determining whether his prior conviction was a crime of violence.  See id. at 19:8-9 (Robbenhaar).

The United States acknowledges that the Court may not rely upon the police report, or upon a recitation of information from the police report in the PSR, in determining whether Farias-Guijarro committed a crime of violence as defined by U.S.S.G. § 2L1.2.  See United States' Response at 4; Shepard v. United States, 544 U.S. at 15.  Accordingly, the Court will not consider the police report or the United States' recitation of the facts from the report for purposes of deciding whether Farias-Guijarro's prior conviction is a crime of violence.  While the Court may not consider these facts for purposes of deciding whether the lesser included offense is a crime of violence, the Court may consider these facts when it decides the variance issue.  Thus, the Court will not consider the facts

---

[3]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

to which Farias-Guijarro objects for the purpose of determining whether his prior conviction is a crime of violence.  The Court will not, however, strike paragraph 21, but will allow it to be considered for purposes of its <u>Booker</u> analysis.

### III.   FARIAS-GUIJARRO'S OFFENSE OF "INJURY TO A CHILD, ELDERLY INDIVIDUAL, OR DISABLED INDIVIDUAL," TEXAS PENAL CODE § 22.04, <u>QUALIFIES AS A CRIME OF VIOLENCE UNDER U.S.S.G. § 2L1.2.</u>

Farias-Guijarro contends, for several reasons, that, under a categorical or modified categorical approach, a conviction under § 22.04 of the Texas Penal Code fails to qualify as a crime of violence and, accordingly, the PSR erroneously adjusts his offense level upward by 16 levels.  <u>See</u> Sentencing Memorandum at 3.  There is, however, sufficient record for the Court to conclude, under <u>United States v. Taylor</u> and <u>Shepard v. United States</u>, that the crime Farias-Guijarro committed in Texas was a crime of violence as defined by U.S.S.G. § 2L1.2.  Thus, the Court finds that the 16-level enhancement is properly assessed.

### A.   TEXAS PENAL CODE § 22.04, THE OFFENSE OF "INJURY TO A CHILD, ELDERLY INDIVIDUAL, OR DISABLED INDIVIDUAL" DOES NOT QUALIFY AS A "CRIME OF VIOLENCE" PER SE BECAUSE USE OF FORCE, ATTEMPTED USE OF FORCE, OR THREATENED USE OF <u>FORCE IS NOT A REQUIRED ELEMENT.</u>

U.S.S.G. § 2L1.2  states that crime of violence "means . . . any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, app. n. (B)(iii). The plain language of § 22.04 of the Texas Penal Code does not require the application of force, or the attempted or threatened use of force, as an element. <u>See</u>  Tex. Penal Code Ann. § 22.04.  Section 22.04 of the Texas Penal Code also fails to qualify as a per se  "crime of violence," because it specifically proscribes "omissions" in addition to conscious acts.  Tex. Penal Code Ann. § 22.04.  Thus, there is a chance that a conviction under § 22.04 may have resulted from a defendant's omission as opposed to some specific act.  Because there

is a risk that physical force will not be used in a § 22.04 conviction, the offense is not, by its nature, a per se "crime of violence" under U.S.S.G. § 2L1.2.

Furthermore, § 22.04 of the Texas Penal Code proscribes conduct, or an omission, that causes bodily injury, if the person acts "intentionally, knowingly, recklessly, or with criminal negligence." Tex. Penal Code Ann. § 22.04.  The Texas statute under which Farias-Guijarro was convicted may be satisfied by either recklessly or criminally negligently causing bodily injury or by actions that do not require physical force.  See Tex. Penal Code Ann. § 22.04. Under the categorical approach of Taylor v. United States, Farias-Guijarro's conviction does not support per se the application of the 16-level enhancement.  See United States v. Perez-Vargas, 414 F.3d at 1284 (stating that a statute criminalizing both reckless and intentional conduct is not a per se  crime of violence).

Both parties concede that  Texas Penal Code § 22.04 is not a crime of violence per se, because it does not contain as an element the use, attempted use, or threatened use of physical force against the person of another.  See Government's Response at 4; Sentencing Memorandum at 5. Section 22.04 of the Texas Penal Code looks to the results of a defendant's conduct, specifically in terms of "injury", "mental deficiency", or "impairment".  Tex. Penal Code Ann. § 22.04.  Accordingly, by its definition, a conviction of "Injury to a Child, Elderly Individual, or a Disabled Individual" does not qualify as a per se "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A).  The Court, therefore, agrees with the parties that the statute is ambiguous and that it is necessary to consider the appropriate documents under Shepard v. United States.

**B.      THE MODIFIED CATEGORICAL APPROACH PERMITS A COURT TO LOOK AT APPROPRIATE DOCUMENTS TO DETERMINE IF THE PRIOR CONVICTION IS A CRIME OF VIOLENCE.**

If the statute of conviction is ambiguous, as it is in this case, the Court may look to the charging document, plea agreement, plea colloquy, or comparable judicial records. See Shepard v.

United States, 125 S.Ct. at 1262.  The Tenth Circuit in United States v. Perez-Vargas stated that,

"when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court

is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, 'the

terms of the charging document, the terms of a plea agreement or transcript of colloquy between

judge and defendant . . . or to some comparable judicial record of this information.'" United States

v. Perez-Vargas, 414 F.3d at 1284 (quoting Shepard v. United States, 125 S.Ct. at 1262).

Here, the USPO provided the Court with Farias-Guijarro's state indictment, the state court's

judgment on plea of guilty before the court waiver of jury trial, Farias-Guijarro's plea agreement, and

the state court's findings, approval and order.  See Addendum.  The United States argues that the 16-

level enhancement is warranted based on the state indictment, plea agreement, and charging

document.  See United States' Response at 4-5.  Specifically, the United States notes that the

indictment returned against Farias-Guijarro charged him with "Aggravated Robbery" and stated that

Farias-Guijarro, in the course of committing theft, "intentionally, knowingly, and recklessly cause[d]

bodily injury to [the victim] a person sixty-five (65) years of age or older by striking [the victim]

about the head with the Defendant's hand."  Indictment at 1 (emphasis added).   The United States

further notes that the plea agreement, which Farias-Guijarro executed with the state, contains a

section entitled "Judicial Confession," which states:

> I, the undersigned defendant in this case, do now hereby, in open Court, admit all of
> the allegations in the indictment or information now pending in this cause including
> any [and] all paragraphs alleged for the purpose of enhancing punishment, and
> confess that I committed the offense as charged in the indictment or information, as
> well as all lesser included offenses arising out of the same criminal episode and admit
> the truth of any and all paragraphs alleged for purposes of enhancing punishment.

Plea Agreement at 5.  The United States argues that, while the Texas state court sentenced Farias-

Guijarro for the lesser included offense of "Injury to a Child, Elderly Individual or Disabled

Individual with Intent to Cause Bodily Injury," Farias-Guijarro admitted to the factual basis contained in the Indictment, which includes an allegation that he struck the victim about the head with his hand. Indictment at 1.

According to the charging document, Farias-Guijarro "did then and there while in the course of committing theft and with the intent to obtain and maintain control of property, intentionally, knowingly, and recklessly cause bodily injury to . . . a person sixty-five . . . years of age or older by striking [the victim] about the head with [his] hand." Indictment at 1. Thus, Farias-Guijarro admitted to the factual basis contained in the Indictment, including the allegation that he struck the victim about the head. The United States contends that, based on Farias-Guijarro's admissions set forth in the Plea Agreement, the Court should conclude that Farias-Guijarro has committed a crime of violence by using force against the victim. See United States' Response at 5.

The United States and Farias-Guijarro disagree whether there is sufficient record for the Court to conclude that Farias-Guijarro used force in the commission of the offense and thus should receive the enhancement set forth in U.S.S.G. § 2L1.2 for having committed a crime of violence. See Defendant's Reply at 1. Farias-Guijarro states that he may admit to the existence of the conviction in paragraph 21, but he specifically does not admit to any underlying facts set forth in paragraph 21. See id. at 1-2 (citing United States v. Martinez-Hernandez, 422 F.3d at 1089 (finding that a challenge to the classification of the underlying conviction as a "crime of violence" carries with it a challenge to the facts underlying said conviction)).

The United States contends that Farias-Guijarro's plea agreement constitutes a blanket admission to all allegations in the original Indictment. See United States' Response at 5. The United States argues that, by pleading guilty to a lesser included offense, Farias-Guijarro admitted to the factual basis contained in the Indictment including the allegation that he struck the victim about the

head.  See id.  Farias-Guijarro argues that he pled guilty to a lesser charge of "Injury to an Elderly Individual," while the original charge "Aggravated Robbery" was dismissed, and, thus, the idea that he admitted conduct that supported a higher charge that was ultimately dismissed "stretches the imagination."  Defendant's Reply at 2.  The Court, however, disagrees.

It is true that the Indictment reflects the original charge of Aggravated Robbery and that Farias-Guijarro pled to a lesser included charge of Injury to Child, Elderly Individual, or Disabled Individual with Intent to Cause Bodily Injury.  See Indictment at 1.  While Farias-Guijarro was indicted for Aggravated Robbery, he nonetheless was convicted of Injury to an Elderly Individual with Intent to Cause Bodily Injury.  See Indictment at 1; Plea at 1.  The Texas plea papers reflect Farias-Guijarro's admission to the Indictment regarding the injury to the elderly, and indicates he intentionally, knowingly, and recklessly caused bodily injury to the victim, a person sixty-five years of age or older, by striking the victim about the head with his hand.  See Plea Agreement at 5; Indictment at 1. The Court finds it significant that the language of the indictment says that he "intentionally, knowingly, and recklessly cause[d] bodily harm to [the victim] . . . by striking [the victim] about the head with [his] hand."  Indictment at 1 (emphasis added).  He thus admitted to all three states of mind -- intentionally, knowingly, and recklessly -- and not to just one of the three.

Furthermore, the Court notes that, through the charging documents, Farias-Guijarro admits to "the presence of [a] mechanical impact that defines when force is physical."  United States v. Rodriguez-Enriquez, 2008 WL 624433 at * 4.  Because Farias-Guijarro's admission indicates "the presence of [a]  mechanical impact that defines when force is physical,"  the charging documents support a finding of a crime of violence because those actions constituted physical force.  United States v. Rodriguez-Enriquez, 2008 WL 624433 at * 4.

Farias-Guijarro, by pleading guilty to a lesser-included offense, admitted conduct that

supported a higher charge for which he was not convicted.  While Farias-Guijarro argues that such a conclusion "stretches the imagination," the Court does not believe that such a scenario is unusual. It is not uncommon for defendants to plead to more than is necessary to support their conviction, because the facts underlying the criminal behavior remain the same regardless of the parties' agreement on what should actually be charged.  Plea colloquies are rarely precise and narrow, but tend to be broad confessions.  There is no doubt that Farias-Guijarro was convicted of the lesser offense, § 22.04 of the Texas Penal Code, and not "Aggravated Assault".  In this situation, however, Farias-Guijarro's plea pled to facts that make his conviction of "Injury to an Elderly Individual" a crime of violence.

There is no dispute that Farias-Guijarro did not plea to Aggravated Robbery.  The flaw in Farias-Guijarro's argument is that, while he did not plead guilty to the charge of Aggravated Robbery, and rather pled to a separate offenses with distinct elements, he admitted certain facts that constitute a crime of violence.  Farias-Guijarro admitted the facts in support of the originally charged Aggravated Robbery.  See Plea Agreement at 5; Indictment at 1.

The Court need not decide whether those facts, automatically or otherwise, support the lesser-included charge of "Injury to an Elderly Individual."  The Court's role at sentencing is not to determine whether the admissions were sufficient to support his conviction, but determine whether he admitted to the use of force in his prior conviction.  By making its decision, the Court is not deciding that Farias-Guijarro's guilty plea to "Injury to an Elderly Individual" will have the same effect as if he had plead guilty to "Aggravated Robbery."  They are different crimes.  All the Court is determining is whether Farias-Guijarro admitted to the use of force.

Farias-Guijarro contends that the Court's action violates due process, as a person is only convicted of the crime to which he was found guilty, by judge or jury, or to which he pled guilty.

See Defendant's Reply at 3 (citing Henderson v. Morgan, 426 U.S. 637, 648-51 (1976)(White, J., concurring)(affirming grant of habeas corpus where the defendant's conviction on guilty plea to lesser included charge violated defendant's right to due process of law: "The constitutional rule relevant to this case is that the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, or enters his plea knowing what the elements of the crime charged are.").  The Court's actions do not violate due process.  The Court is merely using Farias-Guijarro's prior admissions to determine whether a 16-level enhancement is warranted.  Furthermore, the USPO confirmed that the indictment provided to the Court was the only indictment filed in Farias-Guijarro's state case.  See Tr. at 20:6-7 (Pirkovic).  Thus, his admissions to the allegations in "the Indictment" refer to the indictment for aggravated robbery.  Indictment at 1.  Furthermore, the United States Probation Officer and the parties agreed that there is nothing in the record to reflect that the Indictment in the state case was dismissed.  See Tr. at 20:11-22:1 (Court, Pirkovic, Robbenhaar & Backinoff).  Additionally, the state court itself made similar findings in its conclusion that Farias-Guijarro admitted the allegations that were set forth in the Indictment.  See Addendum, Court's Findings, Approval and Order.

Contrary to Farias-Guijarro's fear, there is no need for all the defendants who have ever pleaded guilty to lesser included charges to be concerned that they will now be deemed to have been convicted of the original charges that were presumably dismissed.  Rather, defendants need to only be aware that they will be held accountable for the facts they choose to admit.  In Farias-Guijarro's case, he specifically admitted, in his Plea Agreement, to "all of the allegations in the indictment or information now pending in this cause including any [and] all paragraphs alleged for the purpose of enhancing punishment, and confess that I committed the offense as charged in the indictment or information."  Plea Agreement at 5.  His indictment states that he did "intentionally, knowingly, and

recklessly cause bodily injury to [the victim] . . . by striking [the victim] about the head with Defendant's hand." Indictment at 1. Thus, Farias-Guijarro's prior conviction is a crime of violence, and the 16-level enhancement assessed in the PSR pursuant to U.S.S.G. § 2L1.2 is proper.

## IV.   THE COURT WILL NOT VARY IN FARIAS-GUIJARRO'S CASE BUT WILL SENTENCE HIM AT THE LOW-END OF THE GUIDELINE RANGE TO 41 MONTHS.

Farias-Guijarro argues that his circumstances counsel for a variance resulting in a sentence of 8 months imprisonment. See Sentencing Memorandum at 11. Farias-Guijarro contends that he entered the United States because his family was facing extreme financial hardship in Mexico. See id. at 9. Farias-Guijarro's mother is elderly and ill, and cannot afford her medication. See id. Farias-Guijarro's son has a learning disability, which may be neurological in nature and may require medical intervention. See id.

Thus, Farias-Guijarro's motivation behind his re-entry offense was his family and their economic situation. See id. Farias-Guijarro contends that his present incarceration is largely influencing him in that it is very difficult for him to be unable to provide for his family. See id. Farias-Guijarro informs the Court that 8 months of incarceration is sufficient to satisfy the purposes of sentencing. See id. at 10. He states that not being able to assist his mother and child while incarcerated is a major deterrent to any future criminal conduct. See id.

At the sentencing hearing, Farias-Guijarro's counsel also informed the Court that the victim of Farias-Guijarro's prior crime did not disclose some of the pertinent information about the crime until three months after Farias-Guijarro had been arrested and she had given her initial statement. See Tr. at 35:8-14 (Robbenhaar). Farias-Guijarro's counsel noted that, while Farias-Guijarro's prior crime is not the first time a delayed disclosure by a victim has occurred, it appears that there may have been problems between the victim and Farias-Guijarro's family  which may have been a factor

that played into Farias-Guijarro's ultimate guilty plea.  See id. at 35:15-24 (Robbenhaar).  Farias-Guijarro's counsel also asked the Court to consider the letters that Farias-Guijarro wrote to his former counsel, Mr. William Parnall, which were attached to his Sentencing Memorandum.  See id. at 36:7-16 (Robbenhaar).

The Court has considered the Guidelines, but in arriving at its sentence, the Court has also taken account of other sentencing goals, and specifically the Court has considered the Guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. The Court believes that, after taking into consideration the factors in 3553(a), the punishment set forth in the Guidelines is appropriate for Farias-Guijarro's offense.

The Court has considered the kinds of sentences and  ranges that  the Guidelines establish, and believes that a sentence at the low end of that Guideline range of 41 months reflects the seriousness of this offense.  Congress has demonstrated that it views illegal reentry seriously by assessing it penalties up to 20 years.  Thus, the Court thinks that the nature and circumstances of Farias-Guijarro's crime do not counsel for a variance.

The history and characteristics of Farias-Guijarro also do not counsel for a variance.  The Court does not know what Farias-Guijarro's criminal history was in the Republic of Mexico.  The Court assumes, from the documents and letters that it received, that Farias-Guijarro has been law abiding in Mexico.  Farias-Guijarro's conviction in 2006 and the facts of his crime, however, trouble the Court.  The Court only has limited information about Farias-Guijarro's 2006 conviction, but he admitted to using physical force against an elderly person.  Taking into consideration Farias-Guijarro's actions, the Court does not believe that his history and characteristics counsel for a variance.

The Court understands that Farias-Guijarro may have come back to the United States for

financial and familial reasons, including the medical problems of his mother and son.  While Farias-Guijarro's concern for the well-being of his family is admirable, his reasons for returning are not significantly different from many other defendants who illegally re-enter into the United States and thus, do not counsel for a variance.  The Court is also troubled that Farias-Guijarro returned to the United States within eight months of being deported.  A variance in this case would undermine the strong Congressional policy of not wanting defendants who have committed crimes of violence to return to the United States.  Furthermore, if the Court varied in Farias-Guijarro's situation, it would be introducing a disparity among similarly situated defendants.  Thus, a sentence of 41 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects the factors in 18 U.S.C. § 3553(a).  A sentence of 41 months is reasonable and is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that the objections in Defendant's Sentencing Memorandum are overruled. The Court will deny Defendant's request for a variance.  The Defendant is sentenced to 41 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory Fouratt
  United States Attorney for the
    District of New Mexico
Rhonda P. Backinoff
  Assistant United States Attorney
Albuquerque, New Mexico

*Attorney for the Plaintiff*

John F. Robbenhaar
Albuquerque, New Mexico

*Attorney for the Defendant*